the fourth district appellate court of the state of illinois has now convened the honorable craig hd armand presiding morning counsel good morning we'll start 4-22-0016 the state of lewis versus dr matthew jaeger et al could counsel for the appellant please state your name for the record michael ratson thank you and counsel for the appellate could you please state your name for the record ian barron thank you counsel for the appellant you may proceed thank you good morning your honors as i said my name is michael ratzak i'm here on behalf of elton lewis uh the plaintiff appellant in this case he's the administrator of the state of tyrone lewis uh as the court i'm sure is aware this is a situation where tyrone lewis received medical care by various doctors one of them being dr matthew jaeger uh dr jaeger moved for summary judgment basically on the ground that because he had not seen physically actually seen tyrone lewis on august 29th when he came to the clinic he was not legally responsible and thus not approximate cause of mr lewis's death a few weeks later the difficulty with that position is that the record is clear that tyrone lewis was dr jaeger's patient dr jaeger was the attending physician for tyrone lewis that's not been disputed and if it was we know that if the court may recall dr teal the resident for dr jaeger the i reports to the attending physician and in this case she said i reported to dr jaeger that makes dr jaeger the attending physician which which makes sense because the court may recall that dr teal said that tyrone lewis's care was not actually ever transferred to her she was simply doing the bidding uh of dr jaeger and reporting the symptoms back to dr jaeger i mean if that was not enough to ensure or set up a situation where dr jaeger was responsible for the medical care i mean directly responsible for the medical care given to doctor given to tyrone lewis at that time dr jaeger agreed that he was he had the ultimate responsibility well can we ask you about that mr ratzak yes ultimate responsibility sounds like a legal conclusion it doesn't sound like a factual conclusion you're not arguing for instance that uh dr jaeger is vicariously responsible for the negligence of dr teo are you no that's not our point and that that never was it that would be it i think that's moving into what the defense argued below that uh it was a supervisory situation and we're not arguing that that dr jaeger did not ask the right questions of dr teo or ignored something that she presented to him or even picked a bad resident put somebody in charge of something that he or she was not qualified to do but but your uh expert doesn't say that dr jaeger had to come in and see the patient right no that's correct and really the heart of your claim is that he didn't overrule the resident that he was supervising no i i'm sorry i just i disagree with that your honor the heart of our claim is that dr jaeger when given the facts of the situation should have ordered and this is what our experts said should have done or performed or ordered an endoscopy it's not so much a question of overruling uh or disagreeing with the resident it's just that our experts said that given the symptoms that meant keeping in mind this mr lewis just didn't walk into the into the clinic he'd been seen by dr jaeger dr teo in the hospital he was intubated there uh when he came back for the follow-up care um he had he had symptoms of shortness of breath and uh dr teo said angio uh edema which is a swelling of parts of the body uh dr or dr girl's point is that given the history of the patient and given the symptoms being reported uh by dr teo to dr jaeger jaeger had to do something and not not just over jaeger had to go ahead and perform an endoscopy i don't think that's overruling the resident the resident say didn't say not to do an endoscopy the resident was coming back to jaeger saying this is what i strikes me as being very close to the hypothetical situation in the might be a darren case where the court said you know if a doctor calls up and works with somebody over the phone um and that that person makes some reports back to the doctor and the doctor does something that doctor is still responsible for the care of that patient counsel may i ask a follow-up question in regards to approximate cause then if the uh the deviation uh that's endoscopy given the um uh the facts supplied to dr jaeger by the the resident what does the evidence establish uh in regards to approximate cause if an endoscopy had been performed at that time what would it have shown and what would have been the course of action uh the dr girland's after dr girland girl's affidavit testified that if an endoscopy had performed that would have saved or or given a chance to save mr lewis's life there was no issue in the trial court about about cause and fact the the motion for summary judgment did not come in and say that plaintiff did not prove cause and fact here that that's that if a happened b would have happened um but i can tell the court that dr girland did say they should perform an endoscopy and an endoscopy would have saved his life and and endoscopy is not simply a diagnostic tool it's a treating tool and so that that's that's the basic tie-in and i know no one in the trial court quarreled with the fact that performing an endoscopy order would not have or would have saved tyrone lewis's life the only position they took in the trial court was that because dr jaeger didn't physically see the patient he was somehow not responsible for it and underneath all of this dr girland said it was his duty to care for the patient and that that follows from the fact that he's the attending physician um that goes back to the the the theo case t-h-i-e-l-e um saw that had seen the patient earlier and then was there when the patient came into the operating or into the emergency room uh with some problems early on and said okay i saw him there but i didn't examine him i trusted my partner to take care of it i left that doctor was held to have a duty to that patient to care for that patient that's all we're saying that this doctor had here he had a duty to provide care for this patient uh and that care would have been an endoscopy we don't we should have to we shouldn't have to go down that route because that wasn't the issue in the trial court but but but the expert said he should have performed an endoscopy or had some this case any different than uh any other medical situation where a doctor is being informed remotely let's say it's a doctor on call covering for another uh doctor uh being symptoms findings uh and failing to order something uh and not uh then being uh uh called to account how is this any different that that's our position that a treating doctor whether the treating doctor is bedside or remote or as in the hypothetical in the case i cited by telephone when the doctor is given a set of symptoms the doctor and for his patient the doctor has a duty to care for that patient and in this case the duty would have been to perform an endoscopy it didn't matter if dr jaeger was bedside and listened to the uh patients breathing by himself or if a nurse told him or a resident told him the duty is to to respond to what you have been told and he did not respond i'm not so you're not suggesting mr rasek that dr jaeger had to look behind or second guess the findings made by the resident he could accept those but your argument is even if you do accept those further action was necessary that's that's exactly right whether dr jaeger saw the patient or someone else told him the patient's symptoms dr gerland said and at this point it's not contested i'm sure it will be later but it's not contested at least for purposes of this motion uh when when the when the treating doctor when the attending physician and that's jaeger without contest has information that doctor's got to treat uh it doesn't it doesn't matter how that information got to the doctor there's no case but i'm aware of and certainly not cited because the doctor's input is filtered by somebody else that that takes away that doctor's duty to care for his patient and clearly tyrone moves with his patient another question uh at what stage did the summary judgment motion uh come in where were the parties and uh uh discovered uh to my knowledge they actually i'm sorry to my knowledge and i'll have my opposing counsel may better may be better able to answer your question they got to the point where um actually they just had gotten to the point with covid where they had done some discovery and have not completed to my knowledge had not even completed discovery at this point well and so obviously you hadn't gotten the expert uh uh discovery but you're saying that not even uh back discovery treating uh uh witnesses had been deposed i'm not to my knowledge not not from what not from what i'm aware of from what i've seen they they deposed dr jaeger and they deposed dr teal um to my knowledge and i could be wrong the other people have not been disposed as the court's aware there it's a complex case with other people involved in affidavit but he's not going to be closed yet thank you unless the court has further questions obviously our request is that the summer judgment be reversed and the matter be mandated thank you all right i see none so thank you counsel counsel shirley appley good morning your honors um i think we're all in agreement on two key facts here one dr jaeger did not see mr lewis on august 29th 2014 and two this is not a negligent supervision case and what i want to do is start with that second fact because i think it ties into some of what's being argued here and trying to impose liability on dr jaeger um back in there's a case called foster versus inglewood hospital association and the citation to that is 19 1055 it's a case from the first district in 1974 counsel before i'd like for you to just bookmark where you're at right now i apologize for interrupting but that you uh you're setting up the framework of analysis uh with two uh points but i think it it presupposes uh that the only um uh claim uh uh uh deviation from the standard of care or the the claim malpractice here by dr jaeger is that he uh negligently directed the resident from what mr rasek just uh informed us it's that he was provided uh with uh information faxed by the resident which then uh imposed uh on his he then uh failed to do something he had an active role in the patient's care albeit he did not see the patient but that's not necessary in all medical circumstances to be considered a treating physician he was provided with information had the opportunity to direct the care and failed to do something uh that uh mr rasek's client is saying is a deviation from the standard of care so uh before you continue with your uh discussion about negligent supervision can you just respond to that why isn't this simply a physician being provided with medical information and he is part of the treatment team uh in this regard he fails to do something as alleged by the plaintiff uh how is that not active negligence well your honor we did move for summary judgment and i would submit that if you looked at the dr gerland affidavit he doesn't address those issues there's no it's conclusory his statements there's no facts or background about why dr jaeger should have taken this action or that action based on the symptoms that were presented or the information that was presented to him that barrett that was not your theory below you you did not attack those issues and had they been attacked maybe the affidavit would have been amended but your theory below was simply i didn't have my hands on i don't i don't have responsibility but it relates to the issue of proximate cause and you raised the issue earlier of we don't know what would have happened to mr um we may have raised it but you didn't and below the i mean the affidavit you're right it's very sketchy and conclusory but it wasn't responding to that point either but it does try to raise duty and proximate cause and those issues which are essential to a medical malpractice case and it doesn't get there it's conclusory in that fact we move kind of on the proximate cause issue of nothing that dr lewis did or did not do he didn't see the patient on august 2019 2014 led to this patient's injuries and there's nothing in this affidavit that said hey if dr lewis had done x the outcome would have been different there's no i think that's a shift from what you argued below what you argued below was hey i was just supervising i didn't have any role but now now you want to drill down into the specifics of the care and say well but we need to know if you'd have done x y and z that would have made a difference and that really was not the theory below but i think part of it your honor is what does negligent supervision mean and this whole theory of it's not an issue here i think that's when we know that it's not an issue here right but it but it requires an analysis of we went on summer uh summary judgment on negligence supervision what does that mean all these allegations regarding control um managing the resident taking the one that it was conceded so i mean that's not a big victory what you want on what you want on was the argument that your client did not have a role in the patient's care on the evening in question is that isn't that really how you want well yeah that's part of it the court also found there were no elegant allegations regarding this concept of negligent supervision that were raised in the complaint right since that it was given away that was conceded all all over the record below all over the record here we don't need to go down that way right right but my point too is you have to evaluate what is a negligent supervision claim in this context and our position why do we have to because i think it gets rid of the rest of these arguments that he had a duty to do x y and z and the corollary to that or what's associated with that is okay let's assume that's true the dr girland affidavit doesn't address those matters so you don't have issues or anything in there relating to proximate cause it's not based on just a conclusion we don't know what it is about the presentation of mr lewis on august 29 2014 which required dr jaeger to act what is it there's nothing in the girl in affidavit to that effect and if you look at the girl in affidavit there's only you tell us where in the record that was the issue raised well i believe it was part of our summary judgment um in moving i will agree that motion was very simple but i think the court took it a step farther and evaluated these issues and if you look at appropriate well i think uh that's a great question your honor but i think a trial court can um rule upon what's in front of them at the time and that's what he found do you concede there was a physician patient relationship with dr jaeger i do not because um it just i think looking at that field case that mr rafsak had cited earlier is actually very helpful in this circumstance um that case in that case the doctor performed a bronchoscopy and he was the second doctor to perform a surgical procedure on the patient his partner had previously performed one the doctor performed the bronchoscopy saw the patient and follow up and discharged the patient knowing a complication could arise um the patient subsequently returned to the er the doctor was called the doctor did not see the patient at that time and he moved for summary judgment but essential to the court's opinion in that case is that the doctor maintained a relationship with the patient until the chance for post-procedures complications had passed that's specifically stated in that opinion and here there's not that relationship there's not that continuing relationship that uh dr jaeger saw mr lewis once in the hospital but mr lewis was never said go back to that clinic and follow up with dr jaeger dr jaeger was not his primary providing provision physician in that clinic sentence setting if the council if dr jaeger is not an integral part of the patient's care then what is the point of the resident reporting uh to dr jaeger it's a teaching it's a teaching facility your honor that's it it's just strictly for the education of the resident and not for the care of the patient well in part dr jaeger admitted if this patient had presented with x symptom or y symptom or something more complex he would have seen the patient but that doesn't that tell at all doesn't that tell us that jaeger knew that he had an obligation if the facts warranted to to personally become involved in this patient's care and the issue between the parties is whether those facts existed isn't that really the case correct but where are those facts i would say they haven't been submitted that that's not your theory your theory was there's no facts that that there could be no fact that would bring him involved because he's just a supervisor but i'm also required to respond to my opponent's arguments which is what what i've done here and pointed that out when they say oh there is this direct theory of some type of liability and that's why i mentioned earlier you really have to look at what negligence supervision means and what it doesn't mean because this whole thing of ultimate responsibility the court kicked that out the window that's a theory of vicarious liability that doesn't come into play here i tend to agree with you but but i'm still trying to understand how uh the attending physician has no duty to the patient and and it's based on the circumstances of each case and here i mean um there's nothing like that feel relationship there's nothing uh it's this case is more similar to the reynolds case which i believe is where the physician was called who was outside of the hospital and gave some advice and um the court found that summary judgment was appropriate in that circumstance but but dr jaeger if he had decided that the right thing to do here would have been to either admit the patient perform the scope procedure or get a consult if he if he thought that was the right thing to do it would have happened correct but there's no fact supporting that that that was the right thing to do you're you're sliding away from that from the point what that tells us is he had a decision-making role in this case you may question whether the counsel ultimate responsibility although it sounds like it's not an issue my position would be at least my analysis of this would be it only goes to point out it's his his place or his position in the process not so much negligent supervision as simply that he's a cog in this wheel and that ultimate responsibility just means as justice doherty just pointed out but for his decision things are going to happen one way or another and that decision is going to ultimately be his the supervision of a third year resident may be significantly less than it still is some process that requires him to either sign off on or disagree with or do something as part of this process how does that not make him a a necessary part of the medical decision making of mr lewis's care well i go back to those are the allegations of the vicarious liability which the courts rejected um if you look at that case and foster that was a little different facts it was a surgeon who was in the operating room with a nurse who and properly administrated the anesthesia and it has that case talks about how there needs to be physicians direct control or supervision so all those arguments are out so i think at most what you're left with is this okay i guess we could call it an independent duty but he still has to allege that and come forward with facts supporting that to create a genuine issue of material fact well are you saying that they didn't plead it properly well i think if you look at the complaint it's very um it pretty much tracks the allegations of the girl and affidavit and um that's probably that's one of the reasons we move for summary judgment is let's let's flesh out what this complaint means and we won so isn't that the role of a motion to dismiss i don't think a party's required to file a motion to dismiss um as you know the summary judgment statute provides that you can move for summary judgment at any time and if the opposing party believes that more discovery needs to be done there's a whole process in illinois supreme court rule 191 b to discuss what um submitting an affidavit saying we need more time and that that was not done here well it's a very fundamental difference between a motion to dismiss and a summary judgment motion motion to dismiss addresses a pleading deficiency the motion for summary judgment uh addresses an evidentiary uh deficiency here so you're talking about pleading uh issues uh you picked the tool here a summary judgment motion justice doherty you know previously talked about how you confined your argument uh to something particular you also indicated the trial court maybe went beyond that and started getting into the approximate cause uh cause in fact uh what are we to do here i mean we are we're addressing the battlefield as it uh lays before us well i think your review is de novo so you can affirm on um any basis even one that was not necessarily considered below so it's like you're taking a new look at the summary judgment and we would ask that this decision be affirmed uh for the reasons i've stated today and that what we say in our appellate court brief thank you all right thank you counsel mr ratzak the bottom just very brief the bottom line here is that this resident was a messenger took information back to a doctor who had to be the attending because the resident reports to the attending and that's the only person she reported to and according to our expert witness dr jaeger when he got that information from the messenger made the wrong decision um the patient needed a different kind of care that was that was the the only issue in the summary judgment motion was simply what was dr jaeger's role in the care was he a caregiver or not a caregiver was he attending or not the other issues are going to be presumably handled when the case gets remanded and people start getting into detailed discovery and it may require further amendment to experts i don't know but that's not the issue for this court unless the court has further questions um i would simply just ask for a reversal all right thank you counsel i see no other questions the court will take this matter under advisement the court stands in recess